# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| LIVINGSTON S., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. SA CV 19-00017-DFM <br><br> MEMORANDUM OPINION AND ORDER |

Livingston S. ("Plaintiff") appeals from the Social Security Commissioner's final decision denying his application for Supplemental Security Income ("SSI").[1] The Commissioner's decision is reversed and this case is remanded for further proceedings consistent with this opinion.

## I. BACKGROUND

Plaintiff filed an application for SSI on March 31, 2014, alleging disability beginning January 16, 2015. See Dkt. 16, Administrative Record ("AR") 177-82. After being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). See AR 51-

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

62. A hearing was held on August 22, 2017, and Plaintiff received an unfavorable decision on November 22, 2017. See AR 31-44.

The ALJ found that Plaintiff had the severe impairments of schizophrenia, substance and alcohol abuse, hypertension, and osteoarthritis of the lumbar spine. See AR 33. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work but with the following limitations: "can lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk with normal breaks for a total of six hours of an eight-hour day; sit with normal breaks for a total of six hours of an eight-hour day; no climbing ladder, rope or scaffolds; and no unprotected heights or dangerous machinery. He is limited to simple tasks, object oriented with only occasional interaction with coworkers, supervisors and general public." AR 35. Based on the evidence of record, the ALJ determined that Plaintiff could perform jobs that exist in significant numbers in the national economy, i.e., hand packager and vehicle cleaner. See AR 44. Consequently, the ALJ concluded that Plaintiff was not disabled. See id.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-6. This action followed. See Dkt. 1.

## II. DISCUSSION

The parties dispute whether the ALJ erred in (1) rejecting the opinion of Plaintiff's treating psychiatrists and (2) discrediting Plaintiff's subjective symptom testimony. See Dkt. 21, Joint Statement ("JS") at 4.[2]

---

[2] All citations to the JS are to the CM/ECF pagination. All citations to the AR are to the record pagination.

A.  **Medical Evidence**

Plaintiff contends the ALJ improperly dismissed the opinion of his treating psychiatrists. See JS at 4-12.[3]

1.  **Applicable Law**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 416.927(c). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. See Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014).

When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." Carmickle v. Comm'r, SSA, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). Where such an opinion is contradicted, the ALJ may reject it for "specific and legitimate reasons that are supported by substantial evidence in the record." Id. The ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other factors. See 20 C.F.R. § 416.927(c).

---

[3] Plaintiff also states in passing that the ALJ "failed to consider [Plaintiff's] ability to independently interact in the community" under Listing 12.03. JS at 10. To the extent Plaintiff alleges error here, he has failed to brief this matter adequately and the Court declines to address it.

### 2. Medical Opinion

Plaintiff saw Dr. Natalie Robinson on February 9, 2015. See AR 360. Dr. Robinson noted that Plaintiff reported auditory and visual hallucinations as well as thoughts of hurting others, which improved on Zyprexa. See id. Dr. Robinson noted possible side effects of weight gain and daytime drowsiness. See id. Plaintiff reported a history of inability to work or function due to his mental illness. See id.

Dr. Robinson completed a mental disorder questionnaire. See AR 351-355. She noted that Plaintiff did not need reminders or assistance to keep appointments, was often lethargic, and wore torn and dirty clothes. See AR 351. Plaintiff reported auditory and visual hallucinations since age 14, with commanding-type auditory hallucinations and paranoid thoughts. See id. Plaintiff's paranoid thoughts led him to physical altercations and caused him to isolate himself from others. See AR 353. Plaintiff had mental hospitalizations while incarcerated and no mental hospitalizations while unincarcerated. See AR 351. Dr. Robinson noted that Plaintiff had never worked consistently due to his inability to follow instructions, he could not provide his own food and shelter, and he was sober for the last three years. See id. She noted Plaintiff was soft-spoken, a poor historian, had difficulty remembering past medication and treatment, was typically cooperative, polite, and present, and had delusional thought process and poor memory. See AR 352. She opined that Plaintiff has markedly impaired memory and concentration but was oriented to person, place, and time and could follow simple instructions. See AR 352, 354. She opined that Plaintiff could not adapt to stressors in the workplace due to his mental impairment and therefore could not sustain employment. See AR 354.

Plaintiff began seeing Dr. Bruce Appelbaum in March 2015. See AR 530. In August 2017, Dr. Appelbaum filled out a mental disorder questionnaire

4

and a medical source statement. See AR 526-533. He opined that Plaintiff's mental impairment caused the following limitations: moderate limitation in his ability to understand and remember short, simple instructions; moderate to marked limitation in ability to carry out short, simple instructions; marked limitation in his ability to understand, remember, and carry out detailed instructions, make judgments on simple work-related decisions, maintain attendance and punctuality, perform at a consistent pace without more than regular breaks, interact appropriately with the public, sustain an ordinary routine without special supervision, and respond appropriately to changes in work setting; and extreme limitations in his ability to make judgments on complex work-related decisions and interact appropriately with coworkers or supervisors. See AR 531-32. Dr. Appelbaum noted in an August 24, 2017 letter that Plaintiff complied with treatment yet continued to have severe symptoms. See AR 534. As such, Dr. Appelbaum opined that despite Plaintiff's history of substance use to self-medicate, his primary disability is mental illness rather than substance abuse. See id.

In March 2018, Dr. Appelbaum completed a second mental disorder questionnaire, submitted to the Appeals Council after the ALJ's determination. See AR 10-15. Dr. Appelbaum opined that Plaintiff had marked impairment in his memory, concentration, and ability to focus; no impairments in his ability to perform activities of daily living; symptoms of poor judgment, poor insight, irritability, aggression leading to physical altercations, inability to regularly attend work, and poor communication with coworkers and supervisors. See AR 12-13.

### 3. Analysis

The ALJ rejected Dr. Robinson's opinion because Dr. Robinson saw Plaintiff once and her evaluation was inconsistent with Dr. Appelbaum's more recent opinion and his reports of improvement with treatment and medication.

See AR 41. In turn, the ALJ gave Dr. Appelbaum's opinion less weight because it was not supported by cumulative evidence including his own treatment notes and he did not recognize Plaintiff's substance abuse as an issue.[4] See AR 42. Instead, the ALJ gave great weight to the opinions of two non-examining State agency medical consultants. See AR 41.

The limited evidence of Plaintiff's improvement is not a specific and legitimate reason to discount the treating psychiatrists' opinions, as the record shows that this improvement occurred in the context of an intensive treatment program. See Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014) (noting that reports of improvement "must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace"). Furthermore, as the Ninth Circuit has stated, "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Id.

Moreover, the ALJ also did not discuss how Plaintiff's impairments would be affected when subjected to the stress of a workplace and failed to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence." Cotton, 799 F.2d at 1408. In fact, the ALJ ignored conflicting evidence. For example, when determining that Plaintiff had just a moderate limitation in interacting with others, the ALJ recounted some evidence that Plaintiff could interact with others. See AR 34 ("The claimant reported that he had difficulty being around people. He was still able to go to group

---

[4] The ALJ was aware of Dr. Appelbaum's conclusion that "substance use was immaterial to this case." See AR 42. The ALJ apparently disagreed with that conclusion, however.

6

psychotherapy three times a week. He also reported good relationships with family and friends . . . . It was noted by a treating psychiatrist that he was able to communicate his needs effectively to others, but he was generally uncomfortable around people and in social situations . . . . There is no evidence of more than moderate limitation in this domain."). But the record shows that Plaintiff indicated he had plans to return to homelessness because he preferred it to living with others and considered assaulting others when they irritated him. See AR 455, 465. The record also shows that Plaintiff caused problems through anger outbursts during group therapy and other group settings. See AR 461, 471, 473, 477, 503. Plaintiff also ended up in prison during this period, see AR 380, and got into a fight within ten days of leaving prison, see AR 384, 386. Although some records indicated Plaintiff felt better, the ALJ cannot "cherry-pick" those results from a mixed record to support a denial of benefits, especially in the case of mental impairments which enable claimants to have "good days." Scott v. Astrue, 647 F.3d 734, 740 (9th Cir. 2011).

Reviewing the decision based on the reasoning and factual findings made by the ALJ, see Bray v. Comm'r of SSA, 554 F.3d 1219, 1125-26 (9th Cir. 2009), and finding that the ALJ failed to account for conflicting evidence and lacked evidentiary support for a portion of his findings, the Court concludes the ALJ's determination that Dr. Appelbaum's and Dr. Robinson's opinions were due little weight lacked substantial evidence. See Garrison, 759 F.3d at 1012. Remand is warranted on this claim of error.

**B.** **Subjective Symptom Testimony**

Plaintiff contends the ALJ failed to provide clear and convincing reasons to reject his testimony. See JS at 20-25.

1. **Law**

The Court engages in a two-step analysis to review the ALJ's evaluation of a claimant's symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Garrison, 759 F.3d at 1014 (citation omitted). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). If the ALJ's subjective symptom finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

2. **Analysis**

The ALJ discounted Plaintiff's subjective symptom testimony, citing the fact that objective medical evidence did not support his allegations of physical impairments as well as "inconsistencies in the record" and Plaintiff's activities of daily living. See AR 36, 40.

The ALJ offered a clear and convincing reason for discounting Plaintiff's subjective symptom testimony. The ALJ correctly recognized that although Plaintiff testified that he had not used drugs in years, this testimony was inconsistent with record evidence indicating that in March 2017, Plaintiff was smoking weed daily and speed once every week or two. See AR 40 (citing AR 393). Plaintiff argues that the inconsistency is due his concern of a probation violation, irrational fear, poor judgment and poor insight. See JS 23.

Regardless, the inconsistency is a valid basis to discount Plaintiff's representations about his subjective symptoms, because drug use (or lack thereof) is related to Plaintiff's claims of mental impairments.

As such, the ALJ's consideration of inconsistency with prior statements constituted a clear and convincing reason to discount Plaintiff's testimony and was supported by substantial evidence and the Court need not address his other rationale as any such error would be harmless. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). Accordingly, the ALJ did not err in discounting Plaintiff's subjective symptom testimony.

### C. Remand Is Warranted

The decision whether to remand for further proceedings is within this Court's discretion. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See id. at 1179; Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). A remand is appropriate, however, where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003); Garrison, 759 F.3d at 1021 (explaining that courts have "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."). Here, remand is appropriate for the ALJ re-evaluate the opinions of Dr. Appelbaum and Dr. Robinson and conduct any other proceedings as warranted.

## III. CONCLUSION

The decision of the Social Security Commissioner is reversed and this case is remanded.

IT IS SO ORDERED.

Date: February 19, 2020

DOUGLAS F. McCORMICK
United States Magistrate Judge